UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

CASE NO.: 14-12683

In re:
Wade Ybarzabal,

_____ Debtor(s) /

## AFFIDAVIT AS TO AMOUNTS DUE AND OWING

BEFORE ME, this day personally appeared *Jo Ann Farmer*, (Affiant) who upon oath, deposes on personal knowledge and says:

1.  This Affidavit is submitted in support of the Motion for Relief From Stay filed in this action by Movant, BRANCH BANKING AND TRUST COMPANY, its Successors and/or Assigns.

2.  My name is *Jo Ann Farmer* and I am a *Banking Officer* for the Movant. In that capacity, I am familiar with the books and accounts of the Movant and have examined all books, records, and documents kept by the Movant concerning the transaction alleged in the Motion. All of these books, records and documents are kept by the Movant in the regular course of its business and are made at or near the time of transaction using information transmitted by persons with personal knowledge of the facts. It is the regular practice of the Movant to make and keep these books, records and documents. The books, records, and documents, which the Affiant has examined are in the custody, and under the supervision and control of the Affiant, and are complete, accurate and correct. Furthermore, Affiant has personal knowledge of the matters contained in the books, records and documents.

3.  My responsibilities include, but are not limited to, handling delinquent bankruptcy accounts, ascertaining amounts due and payable, and otherwise handling collections.

4.  I have personal knowledge of the facts contained in this Affidavit. Specifically, I have personal knowledge of the facts regarding the sums of money which are due and owing pursuant to the Note and Mortgage which are the subject matter of this action.

5.  Said Note and Mortgage in favor of BRANCH BANKING AND TRUST

COMPANY, has an outstanding principal balance of $209,937.20 .

6.      The Debtor has defaulted under the Note and Mortgage by failing to pay the payment due on June 1, 2013 and all subsequent payments.

6a.  The current monthly payment is $1,834.61.

7.      The sum set forth in Paragraph 5 above remain due and owing and unpaid.  This account does not include the attorneys' fees incurred by Butler and Hosch, P.A. in this action.

8.      The Mortgage Note and Mortgage, and Supplemental Riders, Amendments, and Modifications, if any, attached to the Motion are genuine, authentic and true copies of the originals.

9.      The Plaintiff has employed the services of the law firm of Butler & Hosch, P.A. in this action against the Defendant, and is obligated to pay Butler & Hosch, P.A. a reasonable attorney's fee for its services, along with all costs and expenses in this action.

10.     I have read the Motion and know from my own personal knowledge that the allegations and facts contained therein are true, accurate and correct.


FURTHER AFFIANT SAYETH NOT.

_JoAnn Farmer_
Affiant

_JoAnn Farmer_
Print or Type Name

## JURAT

State of _North Carolina_
County of _Wilson_

Subscribed and sworn to (or affirmed) before me on
this _17_ day of _Nov._____, 2014,
by _Karen P. Girona_____
provided to me the basis of satisfactory
evidence to be the person(s) who appeared before me.

Signature _Karen P. Girona_

KAREN P. GIRONA
NOTARY PUBLIC
NASH COUNTY, STATE OF NC
MY COMMISSION EXPIRES 8|30|15

Notary Public
My Commission Expires: _8/30/2015_

```
MAS1 LOAN      245    MSP LOAN MASTER MAINT. & DISPLAY   11/12/14   10:23:43
     NAME WJ YBARZABA   TYPE 13 1ST MTG,CONVEN W/O INS            GROUP
-- INV1 -- INVESTOR, SERVICE FEES----------------------------------------------
INV CAT  I       O  SALE/REPURCH --- FNMA LASER --- FNMA DEL
A07 739             FLAG  DATE  CD  DATE  CHANGED   STATUS
                     S   051310  __  _____       0 (0-9)
INV FREDDIE MAC                    (MMDDYY)           SSRI ___
HDR 8200 JONES BRANCH DRIVE    GUAR FEE  ----SERVICE FEE----
    MS/387                       RATE   % RATE  OR $ AMOUNT
    MCLEAN, VA 22102-3110     00.00000 %  .250000     0.00
    ARC                             FRC   SC ACC CD  INT IN ADV BAL
                                     __    __                  .00
  CONTRACT/POOL NO   INV SCHED DEF INT   INV ACT DEF INT   INV SCHED PRIN BAL
   1005130060        _____   _____     218,776.72
---THIRD PARTY SERVICE FEES---    FHLMC  ------EXCESS SERVICE FEES-----
CORRESPONDENT  PLAN  1ST REMIT   INACT   ORIG SERV FEE:    _____
    CODE       CODE    DATE        I     UNAMORT SERV FEE: _____
    ___        ___      ___      GSE R ORIGINAL TERM:      ___
                     (MMYY)      HN  _ _ REMAINING TERM:   ___
CORR/PLAN:                           OPTION: _  DOC CUST: _____
-------------------------------------------------------(PF15: OWNER/ASSIGNEE)
ACTIVE CH 7 BANKRUPTCY              408 DAYS PAST PROJECTED LEGAL DATE
```

```
DLQ1          _____ QX    D E L I N Q U E N C Y  OWNR n/a 11/12/14  10:23:46
13    CONV. RES.         PER/CLS/OFF  B/00/00 AGE:  4Y  8M IR:  5.87500 INV: A07
DUE( 18)     33,188.11  DUE 06/01/13( 16)(09/09R) ASSUM:          ACQ:
LATE CHRG      288.80  PAYMT    @  1,834.61 P: 200 OAK ISLAND DR
BAD CK FEES     25.00  L/C AMT         64.77    MANDEVILLE LA 70448
OTHER FEES     161.60  PAYMT + LC   1,899.38 M:
TOT DUE     33,663.51* PRIN BAL   209,937.20
SUSPENSE        .00  P&I           1,295.47    200 OAK ISLAND DR
NET DUE     33,663.51  DLQ  8 TIME,PAY 26 DAY   MANDEVILLE LA 70448
C/S 518    WADE JOSEPH YBARZABAL        CU CELL UNDETRMNED 504-577-1843
C/D 10/14 LOUIS LEHR JR                            985-626-1209
  *PHONE NO*
 -IMD:N------------------- * ADDITIONAL MESSAGES * ---------------WU: _ ----
ACTIVE CH 7 BANKRUPTCY            CASHIER STOP 4
SUSPENDED FORECLOSURE            PROC STOP = B  BANKRUPTCY
 ----~DUEI---------------------* PAYMENTS DUE *------------------------------
REA/DUE DTE       06/01/13  ESCROW 05/01/14
# DUE/PYM ( 11)   1,834.61 ( 7)  1,858.20
L/C AMOUNT          64.77          64.77
PAYMT + L/C      1,899.38       1,922.97
PYMT AMTS DUE   20,180.71      13,007.40
          # DUE   TOTAL DUE       PAYMENTS   LATE CHRGS    NSF FEES      OTHER
   TOTAL:   18   33,663.51 *    33,188.11      288.80       25.00     161.60
```

BB&T Confidential

```
PAY4      2245    AS-OF 11/13/14   PAYOFF CALCULATION TOTALS 11/12/14  10:24:07
NAME WJ YBARZABA CONTACT NAME WADE JOSEPH YBARZABAL
-------------------------------------------------------------------------------
PRINCIPAL BALANCE         209,937.20            ---------- RATE CHANGES ----------
INTEREST 11/13/14          18,906.26  CALC   INT FROM    RATE          AMOUNT
PRO RATA MIP/PMI                 .00         05/01/13  5.87500       18,906.26
ESCROW ADVANCE              5,918.47         11/13/14
ESCROW BALANCE                   .00
SUSPENSE BALANCE                 .00
HUD BALANCE                      .00
REPLACEMENT RESERVE              .00
RESTRICTED ESCROW                .00
TOTAL-FEES                       .00  W 3
ACCUM LATE CHARGES            288.80
ACCUM NSF CHARGES              25.00
OTHER FEES DUE                161.60
PENALTY INTEREST                 .00
FLAT/OTHER PENALTY FEE           .00         TOTAL INTEREST          18,906.26
CR LIFE/ORIG FEE RBATE           .00         TOTAL TO PAYOFF        240,537.53
RECOVERABLE BALANCE         5,300.20  NUMBER OF COPIES: 1    PRESS PF1 TO PRINT


-------------------------------------------------------------------------------
```

BB&T Confidential

# NOTE

March 19, 2010                               Mandeville                               Louisiana
[Date]                                          [City]                                    [State]

200 Oak Island Drive
Mandeville, LA 70448
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ **219,000.00**       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Whitney National Bank**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **5.875000 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**       day of each month beginning on **May 1, 2010**       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 1, 2040**       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **410 Labarre Road, Jefferson LA 70121**
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,295.47**       .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Ybarzabal, W.
MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - Louisiana
VMP ®                                                                                          Form 3200 1/01
Wolters Kluwer Financial Services                                                   VMP5N(LA) (1001)
                                                                                             Page 1 of 3

338LeOS

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of  **15**  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Ybarzabal, W.
MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - Louisiana
VMP ®
Wolters Kluwer Financial Services

Form 3200 1/01
VMPSN(LA) (1001)
Page 2 of 3

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

**Borrower**

_____  3-19-10   _____  3-19-10
Wade Joseph Ybarzabal          Date      Louis Lehr, Jr.              Date
                               (Seal)                                 (Seal)


_____  Date      _____  Date
                               (Seal)                                 (Seal)

                                                              *[Sign Original Only]*

[ ]  Refer to the attached *Signature Addendum* for additional parties and signatures.

"NE VARIETUR" for identification with an Act of Mortgage passed before me this   19th day of March, 2010   .

                                                 _____

                                        Notary Public:  Kirk J Frosch
                                        Notary Identification Number   52598

Ybarzabal, W.
MULTISTATE FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - Louisiana                        Form 3200 1/01
VMP ®                                                                                                                     VMP5N(LA) (1001)
Wolters Kluwer Financial Services                                                                                         Page 3 of 3

Pay to the Order of BRANCH BANKING AND TRUST COMPANY
            Without Recourse
        Whitney National Bank

By  _____
    MARIANNE MORGAN, VICE-PRESIDENT

                WITHOUT RECOURSE
                PAY TO THE ORDER OF

    _____
    BRANCH BANKING AND TRUST COMPANY

BY  _____
            JULIE M. PALMER, VP

Return To:

Prepared By:
Mavis Dalier
404 E. Kirkland
Covington, LA 70433

# Mortgage

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated March 19, 2010       , together
with all Riders to this document.
(B) "Borrower" is Wade Joseph Ybarzabal and Louis Lehr, Jr.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** The tax identification number of MERS is 54-1927784. MERS is
organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box
2026, Flint, MI 48501-2026, tel (888) 679-MERS.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 1 of 17

> \*MORTGAGE/DOT\*

St. Tammany Parish 2081
Instrmt #: 1762248
Registry #: 1976109 CST
03/25/2010 1:32:00 PM
MB X CB   MI   UCC

338605

State of Louisiana, Parish of St. Tammany

I, the undersigned Deputy Clerk of Court for St. Tammany Parish Louisiana do hereby
certify that the attached is a true and correct copy of a _Mortgage_
dated the _19th_ day of _March_, _2010_ executed by _Wade Joseph_
_Ybarzabal & Etal_ consisting of _21_ pages, executed
before _Rick J Frosch_ _____, Notary Public for the Parish/County
of _St Tammany_ State of _LA_, the original or certified copy of
which document is in my office, under Instrument Number _1762248_
or COB ____, folio ____, MOB ____, folio ____
Given under my hand and seal of office this _1st_ day of _October_, _2013_

_____
DY. CLERK AND EX-OFFICIO RECORDER
ST. TAMMANY PARISH, LOUISIANA

**(D) "Lender"** is **Whitney National Bank**

Lender is a **Corporation**
organized and existing under the laws of **United States of America**
Lender's address is **410 Labarre Road**
**Jefferson, LA 70121**
**(E) "Note"** means the promissory note signed by Borrower and dated **March 19, 2010**
The Note states that Borrower owes Lender **Two Hundred Nineteen Thousand and 00/100**

Dollars (U.S. $ **219,000.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2040**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. All Riders to this Security Instrument are deemed to be a part of this Security Instrument as if fully incorporated herein. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 2 of 17

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|  |  |  |
|---|---|---|
| Parish | of | St. Tammany |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction]: |

See attached Exhibit "A"

Municipal Number: 112-115-0286          which currently has the address of

200 Oak Island Drive                                                      [Street]

Mandeville                          [City], Louisiana 70448          [Zip Code]

("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3019 1/01 (rev. 6/09)
VMP ®                                                                                                VMP6A(LA) (0910)
Wolters Kluwer Financial Services                                                                      Page 3 of 17

Crescent Title, LLC
1748 N. Causeway Boulevard
Mandeville, Louisiana 70471
100519

DATE:        3/19/2010
BORROWER:    Wade Joseph Ybarzabal and Louis Lehr Jr.

PROPERTY ADDRESS:    200 Oak Island Drive, Mandeville, LA 70448

## EXHIBIT "A"
## LEGAL DESCRIPTION

A CERTAIN PARCEL OF GROUND, situated in Section 36, T-7-S, R-11-E, being Lot 38, Oak Island Subdivision, St. Tammany Parish, Louisiana. All in accordance with a final plat by Kelly J. McHugh & Associates, Inc. dated November 24, 1993, revised December 13, 1993 and December 20, 1993, and recorded on December 30, 1993 as Map File No. 1186 in the official records of St. Tammany Parish, Louisiana more fully described as follows:

Lot 38, fronting on Oak Island Drive a distance of 100.00 feet, by 150.00 feet on the side boundary of Oak Island Boulevard by 100.00 feet in the rear on the boundary of Lot 39 and 150.00 feet on the side bounding Lot 37.

Improvements thereon bear municipal number: 200 Oak Island Drive, Mandeville, LA 70448

## MORTGAGOR'S MARITAL STATUS:

**Wade Joseph Ybarzabal**, a person of the full age of majority and a resident of the Parish of St. Tammany, State of Louisiana, who declared unto me, Notary, that he has been married but once and then to Rhonda McNeely Ybarzabal with whom he is divorced and he has not since remarried.

**Louis Lehr Jr.**, a person of the full age of majority and a resident of the Parish of St. Tammany, State of Louisiana, who declared unto me, Notary, that he has been married but once and then to Rita Miorana with whom he is living separate and apart and with whom this is his separate property. Their mailing address is declared to be:

**MAILING ADDRESS:**    200 Oak Island Drive, Mandeville, Louisiana, 70448

to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP8A(LA) (0910)
Page 4 of 17

more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall

Ybarzabel, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 5 of 17

notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender,

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 5/09)
VMP6A(LA) (0810)
Page 6 of 17

for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 7 of 17

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 8 of 17

maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 9 of 17

taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from

Ysarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 3/09)
VMP6A(LA) (0910)
Page 10 of 17

Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0810)
Page 11 of 17

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0810)
Page 12 of 17

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Notice of Default; Right to Cure.** Lender shall give notice to Borrower prior to acceleration following Borrower's failure to pay principal, interest, and other fees and charges as provided in the Note, or following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 15 of 17

Instrument and the sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure as available under Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may accelerate and require immediate payment in full of all sums secured by this Security Instrument without further demand for payment.

**23. Foreclosure.** Following Lender's acceleration of payment, Lender may commence appropriate foreclosure proceedings under this Security Instrument under ordinary or executory process, under which Lender may cause the Property to be immediately seized and sold, with or without appraisal, in regular session of court or in vacation, in accordance with Applicable Law. For purposes of foreclosure under executory process procedures, Borrower confesses judgment and acknowledges to be indebted to Lender for all sums secured by this Security Instrument, in principal, interest, costs, expenses, attorneys' fees and other fees and charges. To the extent permitted by Applicable Law, Borrower waives: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723 and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sales; (b) the demand and three days' delay as provided in Articles 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Articles 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) the three days' delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2733 of the Louisiana Code of Civil Procedure and all other articles not specifically mentioned above. Borrower agrees that any declaration of fact made by an authentic act before a notary public and two witnesses by a person declaring such facts to be within his or her knowledge, will constitute authentic evidence of such facts for purposes of foreclosure under Applicable Law and for purposes of La. R.S. Section 9:3504(D)(6).

**24. Cumulative Remedies.** Lender shall have such additional default remedies as may be available under then Applicable Law. All of Lender's remedies shall be cumulative, and nothing under this Security Instrument shall limit or restrict the remedies available to Lender following default.

**25. Keeper.** Should the Property be seized as an incident to an action for recognition or enforcement of this Security Instrument by executory process, sequestration, attachment, writ of *fieri facias*, or otherwise, Borrower agrees that the court issuing such an order shall, if requested by Lender, appoint Lender, or any person or entity designated by Lender, as keeper of the Property as provided in La. R.S. Section 9:5136, *et. seq.* Borrower agrees to pay the reasonable fees of such a keeper, which fees shall be secured by this Security Instrument as an additional expense.

**26. Cancellation.** This Security Instrument shall remain in effect until canceled from the public records. Following the full payment and satisfaction of all sums secured by the Security Instrument, Borrower may request in writing that Lender provide Borrower with the original paraphed Note marked "paid in full", or with an appropriate mortgage cancellation certificate, for submission to the Clerk of Court or Recorder of Mortgages for the Parish of Orleans for the purpose of canceling the Security Instrument. Lender may delay providing Borrower with the canceled Note or with a mortgage cancellation certificate for up to 60 days following Lender's receipt of Borrower's request. Unless Lender agrees to cancel this Security Instrument from the public records, Borrower shall be responsible for doing so. Borrower shall pay all cancellation costs.

**27. Waiver of Homestead Rights.** Borrower (and Borrower's spouse to the extent applicable) waive any homestead rights and other exemptions from seizure with respect to the Property as may be provided under Applicable Law.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 14 of 17

**28. Savings and Loan Association.** If Lender is a savings and loan association or thrift institution, the Note and all sums secured by this Security Instrument shall have the benefits of La. R.S. Section 6:830.

**29. Future Advances.** Lender may, but shall not be required to, make advances to protect the security of this Security Instrument pursuant to Section 9. At no time shall the principal amount of the indebtedness secured by this Security Instrument, including advances made pursuant to Section 9, exceed 150% of the original amount of the indebtedness set forth in the Note.

**30. Late Charges.** Should Borrower fail to pay any installment of principal and interest under the Note within **Fifteen** days of when due, Borrower agrees to pay Lender a late charge in an amount equal to **5.000** .

**31. Marital Status.** Borrower's marital status is: **Unmarried**

**32. Additional Defined Terms.** As used in this Security Instrument, "Lender" additionally includes any successors and assigns of the Lender first named above, as well as any subsequent holder or holders of the Note, or of any indebtedness secured by this Security Instrument.

As used in this Security Instrument, "Note" additionally includes any substitute note or notes issued in replacement of Note first described above. It is Borrower's intent that this Security Instrument secure all renewals, extensions, refinancings, and modifications of the Note, to the extent provided by La. R.S. Section 9:5390.

As used in this Security Instrument, "Lien" also means a privilege, mortgage, security instrument, assignment or other encumbrance. "Real Property" means "immovable property" as that term is used in the Louisiana Civil Code. "Condemnation" includes "expropriation" as that term is used in Louisiana law.

**33. Property Includes Servitudes and Component Parts.** The Property subject to this Security Instrument additionally includes servitudes and component parts now or hereafter attached to or incorporated into the Property.

**34. Full Ownership.** Borrower is the full and lawful owner of the Property. If the Security Instrument is on a leasehold interest, and Borrower subsequently acquires ownership of the Property, Borrower's leasehold and ownership interests in the Property shall not merge unless Lender agrees to the merge in writing.

**35. Modification of Section 13 of this Security Instrument.** Section 13 of this Security Instrument is hereby modified to the following extent.

Each Borrower covenants and agrees that Borrower's obligations and liabilities under this Security Instrument and under the Note shall be joint, several and solidary with all other Borrowers and with each guarantor of the Note (if applicable). However, to the extent that the Property is community-owned immovable (real) property, and Borrower's spouse co-signs this Security Instrument, but does not co-sign the Note, Borrower's spouse is co-signing this Security Instrument for purpose of: (a) concurring with the granting of this Security Instrument on the community-owned Property (to the extent required under Civil Code Article 2347), without obligating the separate property of Borrower's spouse; and (b) waiving any homestead rights to which Borrower's spouse may be entitled under Applicable Law. Notwithstanding the fact that Borrower's spouse did not co-sign the Note, and further notwithstanding the language of Section 13 of this Security Instrument, Borrower's spouse is obligated for payment of the Note and all other sums secured by this Security Instrument to the extent of the spouse's community property interest, and to the extent that the Note is a community obligation.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP6A(LA) (0910)
Page 15 of 17

**36. Additional Waivers.** Borrower hereby waives production of mortgage, conveyance and other certificates with respect to the Property, and relieves and releases the Notary Public before whom this Security Instrument was passed from all responsibility and liability in connection therewith.

THUS DONE, AND PASSED, on this 19th day of    March, 2010           , in the presence of the undersigned Notary Public, and in the presence of the undersigned competent witnesses, who hereinto sign their names, along with Borrower, after being duly sworn and after reading of the whole.

Borrower

_____  3-19-10
Wade Joseph Ybarzabal                  Date
                                        (Seal)

_____  3-19-10
Louis Lehr, Jr.                        Date
                                        (Seal)

_____
                                       Date
                                        (Seal)

_____
                                       Date
                                        (Seal)

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Ybarzabal, W
LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 8/09)
VMP9A(LA) (0910)
Page 16 of 17

Witness

_____        _____
*Witness (as to all signatures)*         *Witness (as to all signatures)*        **LINDSEY RICHARD**

**Notary**
**State of**   LA
**Parish of**  St. Tammany


_____
Kirk J Frosch
*Notary qualified in*  St. Tammany
*parish,*
*My commission expires:*  with life

*Notary Identification Number:* 52598

LOUISIANA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®
Wolters Kluwer Financial Services

Form 3019 1/01 (rev. 9/09)
VMP6A(LA) (0910)
Page 17 of 17

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 19th day of March 2010 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to Whitney National Bank

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: 200 Oak Island Drive, Mandeville LA 70448

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as Oak Island

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
Wolters Kluwer Financial Services          Page 1 of 3          Initials:
VMP®-7R (0811)

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-7R (0811)                    Page 2 of 3            Initials:                Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)      _____ (Seal)
Wade Joseph Ybarrabal   -Borrower      Louis Lehr, Jr.     -Borrower

_____ (Seal)      _____ (Seal)
               -Borrower                    -Borrower

_____ (Seal)      _____ (Seal)
               -Borrower                    -Borrower

_____ (Seal)      _____ (Seal)
               -Borrower                    -Borrower

**MULTISTATE PUD RIDER** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
VMP®-7R (0811)             Page 3 of 3             Form 3150 1/01

NOTES

# RECEIPT

No. 852433

CLERK OF COURT
ST. TAMMANY PARISH
P.O. BOX 1090
COVINGTON, LA 70434

RECEIVED FROM _Butler + Hosch  PA_

ADDRESS _5615 Corporate Blvd, Ste 500 A BR 70808_

_225-216-1099_          $ _70.00_

FOR _Record Assign of Mortgage  walk-in_
_Brigitte Mentz_

| ACCOUNT | | | HOW PAID | | |
|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | | |
| AMT. PAID | 70 | 00 | CHECK | #3066 | |
| BALANCE DUE | | | MONEY ORDER | | |

BY _Harriette Breaux_
_dy deb ch_

©2001 REDIFORM® 8L816

**When Recorded Return To:**
BRANCH BANKING AND TRUST COMPANY
301 COLLEGE STREET 6TH FLOOR MAILCODE
900-01-06-10
GREENVILLE . SC 29601

**Prepared By:**
BRANCH BANKING AND TRUST COMPANY-
TABITHA SMITH
301 COLLEGE STREET 6TH FLOOR MAILCODE
900-01-06-10
GREENVILLE , SC 29601

State of LOUISIANA
Parish of St. Tammany Parish

## ASSIGNMENT OF MORTGAGE



On 9/16/13 , before me, the undersigned Notary Public and in the presence of the undersigned witnesses, personally came and appeared **Mortgage Electronic Registration Systems, Inc. as nominee for WHITNEY NATIONAL BANK, its successors and assigns** (the "Assignor"), a corporation, having its place of busines at P.O. BOX 2026, Flint, MI, 48501-2026 , represented by **MARCIA L PRIDGEON** , its duly authorized **Vice President** , who declared:
That for value received, the Assignor does hereby assign, transfer, sell and deliver to, **Branch Banking and Trust Company** a corporation organized an existing under the laws of **SC** , whose address is **301 College Street, Greenville, SC, 29601** , made and subscribed by **WADE JOSEPH YBARZABAL AND LOUIS LEHR, JR** , dated **03/19/2010** , in the sum of **$219,000.00** , payable to the order of **Mortgage Electronic Registration Systems, Inc. as nominee for WHITNEY NATIONAL BANK, its successors and assigns** of even date therewith, executed by the same parties, in the same amount, and so paraphed by a Notary Public, **Greenville County** , Lousiana, recorded on **03/25/2010** , under **Instrument No: 1762248** . Mortgage with full power to sell and assign the same; that it has executed no prior assignment or pledge thereof; that it has executed no release, discharge, satisfaction or cancellation of said mortgage; that it has executed no release of any portion of the security described in said mortgage; and, that it has executed no instrument of any kind affecting the mortgage or the liability of the maker or makers thereof.

**Description/Additional information: SEE EXHIBIT A**

This done and signed in my office at Greenville County , Louisiana on the date first hereinabove written, in the presence of the undersigned competent witnesses and me, Notary, after due reading of the whole.

Signed in the presence of and attested by:

**Mortgage Electronic Registration Systems, Inc. as nominee for WHITNEY NATIONAL BANK, its successors and assigns**
(Assignor)

By: **MARCIA L PRIDGEON**
Its: **Vice President**

Witness **MARCIA P WALKER**

Witness **TRUDY PERRY**

SEAL

```
St. Tammany Parish 2231
Instrmnt #: 1923001
Registry #: 2271708 bdp
11/13/2013 9:45:00 AM
MB X CB    MI    UCC
```



STATE OF **SOUTH CAROLINA, GREENVILLE COUNTY**

On ___9\|1\|U\|13___ before me, the undersigned, a notary public in and for said state, personally appeared **MARCIA L PRIDGEON, Vice President of Mortgage Electronic Registration Systems, Inc. as nominee for WHITNEY NATIONAL BANK, its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public **Tabitha A Smith**

**Commission Expires: 03/22/2022**



Crescent Title, LLC
1748 N  Causeway Boulevard
Mandeville, Louisiana 70471
100519

DATE          3/19/2010
BORROWER.     Wade Joseph Ybarzabal and Louis Lehr Jr

PROPERTY ADDRESS:     200 Oak Island Drive, Mandeville, LA  70448

## EXHIBIT "A"
## LEGAL DESCRIPTION

A CERTAIN PARCEL OF GROUND, situated in Section 36, T-7-S, R-11-E, being Lot
38, Oak Island Subdivision, St  Tammany Parish, Louisiana   All  in accordance with a
final plat by Kelly J  McHugh & Associates, Inc  dated November 24, 1993, revised
December 13, 1993 and December 20, 1993, and recorded on December 30, 1993 as Map
File No  1186  in the official records of St  Tammany Parish, Louisiana more fully
described as follows

Lot 38, fronting on Oak Island Drive a distance of 100 00 feet, by 150 00 feet on the side
boundary of Oak Island Boulevard by 100 00 feet in the rear on the boundary of Lot 39
and 150 00 feet on the side bounding Lot 37

Improvements thereon bear municipal number  200 Oak Island Drive, Mandeville, LA
70448

## MORTGAGOR'S MARITAL STATUS:

**Wade Joseph Ybarzabal,** a person of the full age of majority and a resident of the
Parish of St  Tammany, State of Louisiana, who declared unto me, Notary, that he has
been married but once and then to Rhonda McNeely Ybarzabal with whom he is divorced
and he has not since remarried

**Louis Lehr Jr.,** a person of the full age of majority and a resident of the Parish of St
Tammany, State of Louisiana, who declared unto me, Notary, that he has been married
but once and then to Rita Miorana with whom he is living separate and apart and with
whom this is his separate property  Their mailing address is declared to be

**MAILING  ADDRESS.**     200  Oak  Island  Drive,  Mandeville,
Louisiana, 70448